**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
Executive Director
*and Attorney-in-Chief*

*Southern District of New York*
*Jennifer L. Brown*
*Attorney-in-Charge*

February 5, 2024

**VIA ECF & EMAIL**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     **United States v. Charles Briscoe**
        23 Cr 134-3 (VSB)

Dear Judge Broderick:

*"I am extremely disappointed in myself for being in this situation and truly regret my actions that have led me here. . . . I would like to apologize to those were both directly and indirectly affected by my actions. I wake up daily with regret."*

--Ex. A (Letter from Charles Briscoe)

        Charles Briscoe is good-hearted man who has worked since he was a boy to make a better life for himself and his family. He rose from a town of 200 people in rural Arkansas to become the youngest pro basketball agent in NBA history at only 20 years old. He represented several well-known players and grew from an assistant agent to running his own agency, the Briscoe Sports Group. But in his quest to succeed, Mr. Briscoe was not always careful, and ███████████████████ █████████████ he ruined his career and reputation. With his actions in this case, Mr. Briscoe squandered his reputation, his career, and years of hard work and goodwill. He fully accepts responsibility and is deeply sorry.

        This case represents truly aberrational behavior. At 36 years old, this is Mr. Briscoe's first-ever contact with the criminal justice system. He is much more than what he did and what his job used to be. He is a devoted husband to his wife—his high school sweetheart—and a wonderful and involved father to his two small children. He is a deeply religious churchgoer, who recently completed writing a

devotional book with his wife. He is a volunteer—giving back to his home community in Arkansas and to his current one in Texas. He is an active member of the local elementary school's Watch Dogs program, in which he spends a full day each week at his daughter's school assisting the staff. Meanwhile, he is trying to pick up the pieces of his professional life. He recently started a new business with his wife. In the face of his new status as a convicted felon and all the collateral consequences that come with that label, Mr. Briscoe understands that he faces an uphill battle but he is motivated and ready to turn the page.

Mr. Briscoe stands before this Court having pled guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 and § 1343. Since his arrest he has been fully compliant with the terms of his pretrial release. Given the unique facts of this case, his mitigating history and characteristics, lack of criminal history of any kind, his non-existent risk of recidivism, health concerns, and each of the Section 3553(a) factors, the defense respectfully requests the Court grant Mr. Briscoe leniency and mercy and sentence him to time served. His wife and children desperately need him at home, and he needs them.

## Mr. Briscoe's History & Characteristics

Mr. Briscoe was born in August 1987 in Dumas, Arkansas. Presentence Investigation Report ("PSR") ¶ 86. He is 36 years old. Id. He was raised by his parents in rural Winchester, Arkansas, a small community with a population under 300 people. Id. ¶ 88. His parents came from humble beginnings. See Ex. B (Letter from Charles Briscoe, Sr. & Sheila Briscoe). They worked multiple jobs to make ends meet, and Mr. Briscoe joined his father working on farms and at a grocery store to help the family bring in money. Id. ¶¶ 88, 111. His time helping on farms made Mr. Briscoe understand and appreciate what it means to work hard. Id.; see also Ex. B ("I was a farmer for over 20 years, and I took the boys out to work with me so none of my children were afraid of working."). Mr. Briscoe's family is deeply religious, and he was raised in the Baptist church. Id. ¶ 90. Mr. Briscoe was involved in several youth groups, was baptized at 10 years old, and attended church regularly. Id.; Ex. B at 1. His parents have been married for 38 years and clearly love and support their son. *See generally* Ex. B.

Mr. Briscoe met his wife Laquisha when they were in high school. Id. ¶ 91. He was a student-athlete, playing basketball and baseball, and a self-described "sports fanatic." Id. ¶ 103; Ex. A ("I lived and breathed sports. . . . If I wasn't playing sports, I would watch them."). Mr. Briscoe and Laquisha started dating when they were 16 years old and got married when they were 24. Id. They both graduated from high

school in 2005 and attended college. Id. ¶¶ 103–04. Mr. Briscoe graduated Arkansas State University in 2008 with a degree in sports management with a minor in business. Id. ¶ 104. He completed his four-year degree in three years by taking 18 credits a semester and attending summer school. Id.

After graduating, Mr. Briscoe worked first as a recruiter for nurses fulfilling traveling contracts in San Diego, CA and remotely from Arkansas, where he was also trying to break into the business side of professional sports. Id. ¶ 110. His parents remember in those early days, Mr. Briscoe "would get up and put his suit on as if he was going to an office. He put his business plan together and started his business from our living room." Ex. B at 1. He struggled to get his business off the ground, and he needed help to make ends meet. His parents remember that there were times where Mr. Briscoe and his wife had to split a single hamburger for dinner or not eat at all, did not have the money for groceries, and had their heat turned off. Ex. B at 2.

Mr. Briscoe persevered and became the youngest certified agent with the National Basketball Players Association at age 20. Id. ¶ 105. To become certified, Mr. Briscoe was required to earn a degree, pass an agent exam, and attend seminars and trainings. Id. He started out working for the legendary agent Tony Dutt from 2010 until 2013. Id. ¶ 109.[1] Then, after signing several first-round NBA prospects, he founded Briscoe Sports Group. Id. ¶ 108; see also Ex. B at 2. His parents remember the pride in their rural town, especially amongst the young children in their community who had never seen someone they knew on television at the NBA draft. Ex. B at 2 ("[K]ids were . . . able to see someone who looked like them and that came from where they came from; to see that anything was possible, and their dreams could also be a reality."). At its height, Mr. Briscoe's agency employed between 10 and 15 employees and was a profitable enterprise. Id.

Once success came, Mr. Briscoe immediately began giving back to his Arkansas community. He hosted Christmas dinner for the whole town, gave presents to families that needed help during Christmas, and provided hundreds of free lunches. Id. He also assisted his former high school by buying shoes for the basketball team, a new scoreboard, and in the community, care packages for the elderly, medicine for a family that could not afford it for their child, as well as "words of encouragement to those who needed it most." Ex. C at 1 (Letter from Janeshia Jordan).

One person who needed help was Mr. Briscoe's sister-in-law Janeshia Jordan. Ms. Jordan has known Mr. Briscoe since she was in middle school, and writes that he

---

[1] See https://vanguardsports.com/tony-dutt/ (last visited Feb. 5, 2024).

**United States v. Broderick, 23 Cr 134 (VSB)**                    **Page 4 of 12**
**Sentencing Submission (02.05.24)**

has always been "the type to help those in need whatever way possible." Id. After a
hard divorce, Mr. Briscoe welcomed Ms. Jordan and her two sons into his home. See
Id. at 1–2. From the time she moved in, "he always made sure to include [her] children
and never showed difference between them and his children." Id. Anything Mr.
Briscoe's children received, her children did too, and "Charles is the only male figure
they have and . . . he is an important part of their lives." Id. Furthermore, every
"milestone in [their] lives, even when their own dads were not present, [Mr. Briscoe]
was." Id.

   That Mr. Briscoe treats his nephews like his two children is especially
admirable given his dedication to being a father. He and Laquisha have two children,
███████ and ██████████ who are their world. Id.



Laquisha describes in detail Mr. Briscoe's dedication to his children. See Ex. D (Letter from Laquisha Briscoe). She writes that her "heart melts" watching her husband attend their daughter's activities, take her out for treats and to the movies, and how they share a genuine and strong connection. Id. Since their son was born, he "has never missed a night of putting him to sleep for bedtime." Id. In fact, the family does not recall more than a few nights that he was not home with his 10-year-old her entire life. See Ex. C at 1; Ex. D at 1. His parents agree, writing, "Charles is a great father and absolutely loves his children. He is very active in their lives and wherever you see him, you will see them." Ex. B at 2.

In his own letter, Mr. Briscoe describes his daughter's birth as one of his proudest moments. Ex. A at 1 ("I knew that there was a greater purpose on my life, and I was determined to be the best girl dad ever."). See also Ex. E at 1 (Letter from Luther James Jackson) ("He's always playing games with them, taking them on car rides, family walks, trips to the park, movie nights, or simply the day-to-day routines of cooking dinner and bathtime; he's involved."); Ex. C ("I see his best qualities daily in how he loves my sister and his children."); Ex. F (Letter from Latisha Boyd) ("Charles has always been a homebody and a family man, so it came to no surprise that he was an awesome husband and father. He has been at every doctor's appointment, every dance recital, and every event in support of his kids.").

Mr. Briscoe and his family lived in South Florida and then moved to Katy, Texas in 2020, where they continue to live today. Mr. Briscoe closed his agency in March 2022 when he voluntarily relinquished his agent certification.

### Offense Conduct

In March 2019, a then-NBA player ("Athlete-2") approached Mr. Briscoe to be the lead agent for a new agency he planned to run after he retired from playing. PSR § 33. Mr. Briscoe agreed and he paid a commission he earned from one of his clients that signed with Briscoe Sports Group into the new company ("Agency-1"). See id. ¶ 34 (noting that 23% of Agency-1 funding came from others besides Athlete-2). Mr. Briscoe was struggling financially, and he was motivated to merge with Athlete-2 and reduce overhead costs and be linked to someone of Athlete-2's stature and connections.

██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████ Mr. Briscoe committed his own crimes and takes responsibility for
them as well as his lack of judgment ████████████████████████████████████
██████████████████████████████.

      In November 2019, ████████████████████████ that a highly-touted
college player ("Athlete-6") wanted to sign with his agency, but that Athlete-6 was
asking for a $900,000 loan. It was not uncommon to provide a loan to amateur players
who have declared for a professional draft to pay for pre-draft expenses, including
wardrobe, housing, and training. Mr. Briscoe then told Athlete-2 about the possibility
of signing Athlete-6, but instead told Athete-2 that Athlete-6 was asking for a
$1,000,000 loan to sign. Id. ¶ 44.

      ████████████████████ introduced Mr. Briscoe to a person purporting to be
Athlete-6's cousin, and Mr. Briscoe agreed to hire this person to work at his agency if
Athlete-6 signed. Mr. Briscoe never met Athlete-6 or his mother, but he signed a
contract with them to be Athlete-6's agent. Evidence shows that all three
digital signatures were made from the same IP address. Id. ¶ 45. Based upon the
contract, Athlete-2 sent Mr. Briscoe $1,000,000. Id. ¶ 46. Mr. Briscoe then sent
$544,000 Mr. Darden, Jr., sent $306,642 to pay a debt, and kept the remaining
approximately $150,000. Id. Mr. Briscoe believed that Mr. Darden would be sending
approximately $900,000 to Athlete-6 (the $300,000 sent to pay a debt was originally
meant to be sent by Mr. Darden).

      In the truth, Athlete-6 was not signing with Agency-1 or Mr. Briscoe. ████
██████████████████████████████████████████████████████████████████
Nonetheless, Mr. Briscoe accepted money ██████████████████ and was not truthful
with Athlete-2 about the amount of the purported loan. Mr. Briscoe was in debt and
badly needed funds. Id. ¶¶ 112–14.

      Mr. Briscoe was indicted along ████████████████████ others on March
13, 2023 and then arrested on March 23, 2023 in the Southern District of Texas. PSR
at 1; id. ¶ 56. He was released with bail conditions on the same day. Id. He voluntarily
appeared in the Southern District of New York on April 10, 2023 for his initial

---

2   Available   at   https://nymag.com/intelligencer/2014/02/calvin-darden-jr-maxim-
knicks-scams.html (last visited Feb. 5, 2024).

appearance in this case. Id. Mr. Briscoe pleaded guilty to a one-count superseding felony information on November 8, 2023. Id. ¶ 4.

Mr. Briscoe has expressed extreme remorse at every opportunity. He has decided to plead guilty ████████████ ████████████████████████████████████ because of his remorse and desire to accept responsibility for putting himself in this position. He accepted responsibility during his presentence interview as well as in his letter to the Court. See id. ¶ 66; Ex. A.

**Post-Arrest Conduct**

Mr. Briscoe's arrest was shocking and devastating for him and his family. Since that morning, his daughter has become scared that the police will come to the house again. PSR ¶ 93. ███████████████████████████████████ ██████████████████████████████████ All the while, Mr. Briscoe has strived to make the best of his circumstances and move forward for his family. He has been fully compliant with the terms of pre-trial release. Id. ¶ 6.

With the news of his arrest widely circulated, Mr. Briscoe knew he had an uphill battle in finding different work. He and his wife worked together to start Next Level Consulting before he was arrested. Id. ¶ 106. Afterwards, Mr. Briscoe took a more active role in the company, where they connect newly publicly traded companies with celebrity ambassadors. Id. ¶ 107. Mr. Briscoe and Laquisha enjoy working together and hope their business will continue to grow in the years to come. It has been slow going, and the family had to move out of their home and in with Laquisha's sister and her two sons in April 2023 given their meager income. Id. ¶ 94.

Given these challenges, Mr. Briscoe leaned into his family and his faith. Laquisha believes that his faith is stronger than ever as demonstrated by Mr. Briscoe's weekly bible study with his children and nephews. Ex. D at 2. They wrote a devotional book called "Just a Moment; To Be Lost and Not Know That You Are Lost" and Mr. Briscoe has gone 300 consecutive days of doing his morning and nightly devotionals. Ex. A at 2.

As for his family, nothing gives him more satisfaction than his weekly volunteer position at his daughter's school. Id. ¶ 92. Through that role he has chaperoned field trips, helped in the library, and assisted in the classroom. Id. The program coordinator, Rachel Weatherford writes that Mr. Briscoe is an "invaluable volunteer" who is eager "to help wherever he is needed." Ex. G (Letter from Rachel

Weatherford). She goes on that "Mr. Briscoe has consistently demonstrated exceptional dedication, positive attitude, and a genuine passion for making an impact on the school community." Id.



## The Most Appropriate Sentence: Time Served

Mr. Briscoe is scheduled to be sentenced on Friday, February 16, 2024. Before turning to the Section 3553(a) factors, the Court must calculate the advisory Guideline Range. The statutory maximum in this case is five years' imprisonment and the Guidelines Range is between 18 to 24 months. PSR at 32. Probation recommends a variance to eight months in prison given Mr. Briscoe's history and characteristics and his "positive adjustment to pretrial supervision and familial ties and responsibilities." Id. ¶ 135. Mr. Briscoe has a base offense level of 15 (largely driven by the total loss amount in this case), and a criminal history category of I because he has no prior juvenile or adult convictions. Id. ¶¶ 78–84.

From this starting point, the Court turns to 18 U.S.C. § 3553(a), which mandates that the Court impose a sentence "sufficient, but not greater than necessary" to achieve the goals of retribution, deterrence and rehabilitation. The Second Circuit has explained that "[i]n deciding what sentence will be 'sufficient, but not greater than necessary' . . . a sentencing judge must have a generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain." United States v. Singh, 877 F.3d 107, 121 (2d Cir. 2017) (internal quotation marks

---

[3] See Mayo Clinic, Diverticultis, (Available at https://www.mayoclinic.org/diseases-conditions/diverticulitis/symptoms-causes/syc-20371758#) (last visited Feb. 5, 2024).

omitted). Considering each of the goals of sentencing with a "generosity of spirit," a sentence of time served is the most just and appropriate total sentence for this case.

I.    **Mr. Briscoe's History & Characteristics as well as his Post-Arrest Conduct Call for a Sentence of Time Served.**

Mr. Briscoe has lived a productive and law-abiding life to the benefit of his community and family. This is his first criminal conviction of any kind. Since he has been supervised pretrial, he has been fully compliant with the terms of release. He does not use drugs or drink alcohol. PSR ¶ 101. He has demonstrated he respects the law and that he is an excellent candidate to continue to succeed on supervised release. As Probation notes, in recommending a variance, he has "otherwise been a law-abiding and contributing member of society." PSR at 32.

His friend Latisha Boyd explains, "Charles is a very genuine, caring person, and wants to positively impact everyone who is close to him in life." Ex. F. at 1. No one sees that more clearly than his family. He is so pivotal and integrated into their lives—school pickups, bedtime—that Laquisha believes that if he "is sentenced to a term of imprisonment, it will destroy our children, myself, his parents, and our entire family." Ex. D at 2. He is that vital to their lives and well-being. Taken as a whole, his history and characteristics, described in detail above, call for a sentence of time served.

II.    **Mr. Briscoe's Offense Does Not Require Additional Time in Prison.**

Mr. Briscoe's advisory Guidelines range is elevated due to U.S.S.G. § 2B1.1(b)(1) of the Guidelines—the so-called "loss table" for fraud offenses. Due to that provision alone, the Guidelines increase by an incredible 14 levels. See U.S.S.G. § 2B1.1(b)(1)(H). These large loss amount enhancements have been subject to widespread criticism, do not reflect the sentencing factors under Section 3553(a), and "fail[] to measure a host of other factors that may be important, and may be a basis for mitigating punishment, in a particular case."[4]

Judge McMahon has called the loss enhancements "utterly ridiculous." United States v. Black, 16 Cr. 370 (S.D.N.Y. Oct. 24, 2019) (McMahon, J.), ECF No. 457, Sent. Tr. 56:5–16. Indeed, there is a "widespread perception that the loss guideline is broken" to the point that the Guidelines "are of diminished value to sentencing

---

[4] A. Ellis et al., At a "Loss" for Justice: Federal Sentencing for Economic Offenses, 25 CRIM. JUST. 34, 37 (2011).

judges." United States v. Corsey, 723 F.3d 366, 378, 380 (2d Cir. 2013) (Underhill, J. concurring) (internal quotation marks and alterations omitted).

The Guidelines' loss enhancement was developed "without the benefit of empirical study of actual fraud sentences by the Sentencing Commission." Corsey, 723 F.3d at 380. Because the Commission failed to rely on empirical data or national experience in promulgating and amending Section 2B1.1, this Court is free to conclude that the application of this Guideline "yields a sentence greater than necessary to achieve § 3553(a)'s purposes." Kimbrough v. United States, 552 U.S. 85, 109–10 (2007); see also United States v. Adelson, 441 F. Supp. 2d 506, 513 (S.D.N.Y. 2006) (Rakoff, J.), aff'd 301 F. App'x 93 (2d Cir. 2008) (explaining that relying on Guidelines calculations driven mechanistically by loss amounts can produce an "utter travesty of justice.").

Although Mr. Briscoe took part in a serious offense, his role is dwarfed by others charged in this case. ███████████████████████████████████ ███████████████████████████ Given this fact alone, it is clear he is more similar to Mr. Gilder, who the Court sentenced to time served ██████████████ ████████████. See 18 U.S.C. § 3553(a)(6). A sentence of time-served would also be consistent with the sentences imposed on defendants with similar records who have been found guilty of similar offenses. See id. Last year, judges in this District sentenced defendants convicted of fraud below the Guidelines in 78.9% of cases. See Ex. I (sentencing data). 2021 produced similar results. Id.; see also United States v. Ramos, 20 Cr 4, ECF No. 60 (S.D.N.Y. Apr. 8, 2022) (Ramos, J.) (sentencing a fraud defendant with a Guideline Range of 41 to 51 months to time served); United States v. Thompson, 19 Cr 698, ECF No. 51 (S.D.N.Y. Feb. 16, 2021) (Ramos, J.) (sentencing a fraud defendant with a Guideline Range of 37 to 46 months to time served). The same result is warranted here.

III.    **Mr. Briscoe's Health and Need for Treatment Call for a Sentence of Time Served, Especially Given the Current Realities within the BOP.**

Section 3553(a)(2)(D)—which requires the Court to consider how to provide Mr. Briscoe with needed medical care or other treatment "in the most effective manner"— weighs against the imposition of incarceration in this case. █████████████████████ ██████████████████████████ Given his condition and the dismal care he can expect in Bureau of Prison ("BOP") custody, any term of imprisonment in a BOP facility would introduce an unnecessary risk.

The BOP, especially in light of its current extreme staff shortages, is not up to the task to properly caring for inmates with serious health challenges. In 2016, the Department of Justice Inspector General issued an alarming report on conditions within the BOP. See U.S. Dep't of Justice, Office of Inspector Gen., The Impact of an Aging Inmate Population on the Federal Bureau of Prisons (Rev. Feb. 2016).[5] The Inspector General concluded that "BOP institutions lack appropriate staffing levels to address the needs of an aging inmate population," which causes acute problems for inmate medical care. Id. at ii. These staffing shortages and the problems they caused have only been exacerbated by the COVID-19 pandemic, during which the BOP lost even more trained staff and the medical needs of inmate populations increased exponentially. See, e.g., Walter Palvo, Federal Bureau of Prisons' Medical Care Falls Short Of Its Own Policy, FORBES (Apr. 2022) ("standards are being compromised as a result of staffing shortages that the agency has faced for years now").[6]

Those standards of course pertain to diet as well. Defense counsel has received many letters from multiple inmates in multiple cities across the country complaining about the quality and safety of the food at BOP facilities. There is no doubt Mr. Briscoe would experience similar poor conditions. The risk to Mr. Briscoe's health is unnecessary given his role in the offense and his lack of prior criminal record.

IV.    **Mr. Briscoe Has Demonstrated that He is Individually Deterred.**

A sentence of time served is adequate punishment to deter Mr. Briscoe from committing further crimes. He has been devastated by this arrest and conviction and has fully learned his lesson. Mr. Briscoe writes in his letter, "I realize that in a matter of seconds, everything can be taken away. On the day of my arrest, not knowing if I would ever see my kids and my wife again absolutely tore me apart." Ex. A at 2. His dedication to his family will ensure that Mr. Briscoe never commits another crime again as he cannot bear to lose them. See id. ("My motivation is my kids, wife, parents, and family . . . providing, protecting, and loving them is what I want to continue doing.").

---

[5]    Available at https://oig.justice.gov/reports/2015/e1505.pdf (last visited Jul. 18, 2023).

[6]    Available at https://www.forbes.com/sites/walterpavlo/2022/04/19/federal-bureau-of-prisons-medical-care-falls-short-of-its-own-policy/?sh=7b7917635eab (last visited Jul. 18, 2023).

The fact that Mr. Briscoe was arrested, prosecuted in federal court, and punished will provide sufficient general deterrence; further incarceration is not required. The collateral consequences and reputational injury combined form sufficient punishment to provide for general deterrence.

V.    **A Sentence of Time Served would Lead to More Restitution Payments.**

As a final matter, Section 3553(a)(7) calls on the Court to consider "the need to provide restitution to any victims of the offense." Mr. Briscoe intends to bring $500 to begin paying his restitution from the date of his sentencing. Sentencing Mr. Briscoe to time served would result in him being able to work and pay back restitution. [7]

### Conclusion

Laquisha writes "I pray that this isn't the day that I must find out what I would do without Charles. Charles is the best father that a child could have." Ex. D at 2. His parents write, "He has lost his home, cars, dignity, and pride" Ex. C at 1. It is true Mr. Briscoe lost nearly everything, but his wife and family—those most important—stood by his side and that is all that matters to him. For the reasons stated above, a prison sentence is not the answer for Mr. Briscoe. He has fully learned his lesson, and he is amenable to whatever additional conditions the Court requires (community service, mental health counseling, etc. while on supervised release). Separating him from his family and him from them would be too harsh a punishment given the mitigating circumstances of his offense.

Mr. Briscoe respectfully asks the Court grant him mercy and leniency and allow him to stay in the community with his wife and young children. Please grant him that chance and sentence him to time served.

Respectfully Submitted,

/s/

Ian H. Marcus Amelkin
Federal Defenders of New York, Inc.
(212) 417-8733
ian_marcus_amelkin@fd.org

---

[7] The defense requests the Court waive interest on any restitution pursuant to 18 U.S.C. § 3612(f)(3)(A) because Mr. Briscoe is indigent.

# EXHIBIT A

Honorable Judge Vernon S. Broderick,
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Broderick,

My name is Charles Briscoe, and I am writing to you today to ask for leniency in my upcoming sentencing. Before I begin, Your Honor, I would like to first apologize to you for being in your courtroom. I am extremely disappointed in myself for being in this situation and truly regret my actions that have led me here. I am sorry for those actions, and I am sorry that you are now having to take the time out of your day to read a letter from me. I would like to apologize to those who were both directly and indirectly affected by my actions. I wake up daily with regret for my actions.

Who is Charles Briscoe? I can assure you that I am a better man than what you have seen thus far. I am the proud father of 2 children, the husband to my high school sweetheart, the father figure to 2 of my nephews, a son, the youngest of my siblings, a family member, and a friend. I am a former sports agent from a small town. My parents are hard-working individuals who worked long hours to provide for my brothers and I. Growing up, I was a sports fanatic; I lived and breathed sports. I played sports with my cousins and when I got old enough, I played organized sports. If I wasn't playing sports, I would watch them. A lot of kids dream of becoming a professional athlete, but my dream was to become a successful sports agent and businessman. My mom told me that when I was younger, I would always put on a suit just to sit on the couch. At an early age, I began to manifest how I wanted my life. As I entered high school, I was completely focused on my future and making my dreams a reality. I started dating my wife when we were both 16. I obtained my bachelor's degree in 3 years and at the age of 20 I became a certified NBA Sports Agent.

My wife and I got married at the age of 23 and my focus was on being the best husband and agent that I could be. Our first child was born in 2013 and my focus was being the best father, husband, and agent that I could be. I was determined to work hard; persevering through obstacles, challenges, and barriers that were placed in my path to become a successful man that they could be proud of. My daughter's birth was one of my proudest moments. I knew that there was a greater purpose on my life, and I was determined to be the best girl dad ever. I didn't have any sisters, but I knew how important a father was, and I especially knew because my wife always mentioned the lack of a father-daughter relationship that she had growing up. I took my daughter everywhere, she went on my recruiting visits, to the NBA Draft, NBA Summer League, trips to visit clients, and attended games; she and my wife went pretty much everywhere that I went because my family was and still is the most important thing to me. I have had many clients and received high praise as an agent, but nothing compares to being a father. In 2018 my wife had a miscarriage with what would have been our second child. In March 2020, at the very beginning of the Covid-19 pandemic, we found out my wife was pregnant. She gave birth to our son in December 2020 and once again I was so proud and thankful to God for blessing us with him. Just like my daughter, I have been by my son's side since birth. Although he couldn't travel as much as my daughter, due to the pandemic, he and I have shared priceless moments. I have been involved in every aspect of his life and the father-son experience has been the best. Being blessed with a daughter and a son has been amazing and they are my everything.

From this experience, I have learned that mistakes happen and that seeking forgiveness and taking full advantage of a second opportunity is an absolute must. I have learned that leaning on God is the only way that I can make it daily. I realize that in a matter of seconds, everything can be taken away. On the day of my arrest, not knowing if I would ever see my kids and my wife again absolutely tore me apart. In this moment I am still torn apart because I do not know what the future holds but I am praying that I get to stay home and help my wife raise our daughter and son. Since the day of my arrest, I have been intentional with my relationship with God. The first person I called on was God and asked him to bring me back home to my family. I am approaching 300 consecutive days of doing my morning and nightly devotionals. My wife and I have written a devotional book called Just A Moment; To Be Lost and Not Know That You Are Lost, to encourage others to develop and maintain a personal relationship with God. Through this experience we have learned that God is still good and that mistakes don't have to define you.

My motivation is my kids, wife, parents, and family; those who truly need me. Providing, protecting, and loving them is what I want to continue doing. I'm looking forward to continuing to volunteer at my daughter and nephew's school where I volunteer weekly. The smiles that it not only puts on their faces but also the other kids' faces are priceless. I'm looking forward to continuing to build Next Level as a company to become one of the top tier companies in the world. I will utilize every day to network and secure consulting opportunities. I am also looking forward to spreading the word about God's faithfulness via the devotional book. We are currently in talks with a firm to represent us for the promotion of the book. If given this second chance I will be extremely grateful. I will work daily to assure that I am never in any situation ever again. I am asking for grace and mercy and can assure you that I will never be in your courtroom or any other courtroom again.

Sincerely,

Charles Briscoe

# EXHIBIT B

Honorable Judge Vernon S. Broderick,
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Broderick,

We, Charles Edward Briscoe Sr. and Sheila Briscoe, are writing this letter in support of our youngest son,
Charles Briscoe whom we call Corey. It is a difficult task to write on behalf of a young man that we
brought into this world and in our eyesight was perfect. It is hard to put into words all the things that
Charles represents to our family. Our baby boy has made us proud in every way. Before we speak on our
son, we would like to tell you about us. Charles E. Briscoe Sr., I am 63 years old, was born in McGehee,
Arkansas, and the baby of three children. We didn't have much, but we made do of what we had. We
lived in what was referred to as a "shotgun house". I moved out at the age of 16 and got a job while I
continued to go to school. I graduated and went to college at the University of Arkansas at Monticello. I
initially went to college to be a teacher but later changed my field of studies to Business Management. I
received a Bachelor of Art in Business. I was a farmer for over 20 years, and I took the boys out to work
with me so none of my children were afraid of working. I own an Insurance Business that will be passed
down to our children once I retire. Sheila Briscoe, I am 58 years old and was born in Winchester,
Arkansas with a population of less than 200 people. I was raised by my grandmother and great
grandmother. My mother had me at the age of fifteen. My grandmother had a fifth-grade education and
she really valued education. She would say that "I didn't have an education, but I want you to get as
much education as possible". I was the first to attempt to go to college in my family although I didn't
finish because I got pregnant with my first child and got married to his father shortly after. We have been
married for 38 years. I later got an associate degree in Business. I worked in factories and currently work
in the Healthcare field. I am an Outreach Enrollment Specialist and I have been in this field for over 16
years.

Now, about our son Charles Corey Briscoe. There is so much that we can tell you about him growing up
as a child and being raised in Winchester, Arkansas. As stated above, the population is less than 200
people so it's safe to say that everyone knows each other. The saying "it takes a village to raise children"
this is the exact sentiments; everyone helped each other. Charels has always been a smart and intelligent
child. He gave his life to Christ and was baptized at 10 years old. Charles was the child who we didn't
have to discipline as much as the others because he was respectable. We aren't saying that he was
perfect, but he didn't get out of line with people. He got good grades in school and he played sports
(baseball and basketball) throughout high school. He made the all-star team for many years in baseball.
Our family is big on sports and we not only enjoy playing, watching, but also attending sporting events.
Charles worked at the local grocery store (Big Star) in Dumas, Arkansas until he went off to college. He
went to college and obtained his degree in Sports Management in 3 years. His dream was to become a
Sports Agent. Upon graduating he came home after college and spoke with us about starting his own
business. Every morning he would get up and put his suit on as if he was going to an office. He put his
business plan together and started his business in our living room. Although he faced several challenges
throughout his career, he has always been determined to be successful and God saw him through it all.
Our son knows what it means to struggle; he has seen it firsthand. When he moved to Atlanta, Georgia
and could not find work he would put in application after application because he was determined
to provide for his family. It takes a lot out of a man when he can't provide for his family. When things got
to a point that he was in dire need, he would call home and we would send what we could to them. We

cried after we eventually found out that there were several occasions when he and his wife had little to no money and that they would split a hamburger for dinner and sometimes wouldn't eat at all. We can remember another time when he and his family moved to Maumelle, Arkansas and there weren't any groceries in the house. We went up to visit not knowing what was going on, but he never mumbled a word about needing money. We didn't realize until later that the gas was off and he was just getting things turned back on. Again, he figured it out on his own as he has done on many instances. Our son preserved through this and so many other things because he was determined to be successful. After several years, he finally got his first, first-round draft pick. It was huge for not only him but those who looked up to him. Then when got another first-round draft pick and was invited to sit in the green room, those kids were again able to see someone who looked like them and that came from where they came from; to see that anything was possible, and their dreams could also be a reality. He didn't let his success just be for himself, he always thought about giving back to the community and he did just that. One year he hosted a sit-down Christmas dinner for the entire community where residents or anyone in the vicinity could come and enjoy a home-cooked meal, games, and giveaways because he knew that the holiday season was rough on people. Another year he provided over 750 t0-go lunch plates; free of charge to anyone who wanted one. These were just a few of the events that he gave back to the community and there are many more things that he did publicly as well as discreetly. He wanted to show appreciation back to the community for supporting him and rooting for him to succeed in his dream job. Charles is a great father and absolutely loves his children. He is very active in their lives and wherever you see him, you will see them. Everything that he does, he has always made sure that everything he did was family friendly because he always wanted to have his wife and kids with him. He has always volunteered at his daughter's school no matter where they were living and that hasn't changed; he still volunteers weekly.

We know that he has made some mistakes, and he is very sorry about the things that he has done. We have had conversations about the mistakes he has made, and he regrets them dearly. We know if our son could change the hands of time that he would not have been involved in the situation. He never wanted to put his family in a situation to where they would feel traumatized and embarrassed of anything that he had done. He has lost his home, cars, dignity, and pride but we're thankful that although Charles has always been a church goer; he has gotten a closer relationship with God since this situation occurred. He has a true relationship with God and the man that he is being molded into is one that we know will be a vessel to draw others closer to God.

If Charles is sentenced to a term of imprisonment, it would destroy his family. His daughter has recalled the morning of the arrest and has gotten triggered by hard knocking and the doorbell ringing. His son, although he doesn't recall the morning of the arrest, sometimes wakes up throughout the night and he only wants his dad. His wife tries to stay strong for everyone else but there have been times that she has called me (Sheila) and the two of us have cried on the phone together. This has taken a toll on all of us. Since the arrest, I (Charles) have been dealing with high blood pressure and heart issues. I (Sheila) have had my nerves all over the place. My hair has completely fallen out on the top of my head. I've been seeing a dermatologist and now I must wear a wig due to the severity of the hair loss. People in the community are also devastated and are praying that he won't be sentenced to a term of imprisonment

Charles and his wife and kids are planning to stay in Texas. His wife has a business that the two of them are focused on building. His dad's business is also one that he wants to turn over to him as he is looking at retirement.

Charles is a loving son, brother, husband, father, and friend. He is big on family and is always willing to help others in any way that he can. We know that he will never be in a situation like this or any other situation ever again. If the court sees fit to allow Charles not to be sentenced to a term of imprisonment, we will be extremely grateful.

Sincerely,

Charles Edward Briscoe Sr. & Sheila Briscoe

# EXHIBIT C

The Honorable Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Dear Judge Broderick,

My name is Janeshia Jordan, and I am the sister of Charles wife Laquisha. I am originally from Arkansas but since I separated from my ex-husband in 2018, I have been in Florida with Charles and Laquisha, and I am currently in Texas where they reside. I went to Dumas High School, upon completion of that, I went on to obtain my associate in business management, my bachelor's in criminal justice and my master's in Human Resource Management I have worked in various positions in all those fields, from helping my aunt and my mom run their restaurants, to working as a detention officer, to working as a HR Director, along with substitute teaching, CAN/ home health. I currently work from home for American Family Insurance. Many will say I do not know what field I want to work in, but I like to think of it as having options and showing my children that there are many careers to choose from and to never feel bad if you decide to change up.

I am writing this letter in support of my brother-in-law Charles Briscoe, in hope of providing you with information on how much of a good person Charles is to not only my sister, niece, nephew, and my children but also anyone that he can help. For as long as I have known him, which has been since I was in middle school and him and my sister started dating when they were in high school, he was always the type to help those in need in whatever way possible. Growing up, he came from a small town in southern Arkansas where there were little to no jobs, limited things to do as a kid and just no opportunities for growth. He graduated college, got his degree, and started building his brand for himself and my sister. One thing he always made sure to do was to give back to those who were less fortunate than he was. Over the years, he has hosted several events, such as holiday toy giveaway, provided meals, purchased shoes for our high school basketball team, assisted with getting a new scoreboard for the school, provided meals and care packages for the elderly, Easter baskets for the kids, hoodie giveaway, provided funding for medicine for a parent who couldn't get the meds her child needed, scholarships, and just always gave his expertise and words of encouragement to those who needed it most. I have included pictures of some of the events that he and my sister have put together over the years. Charles has always been a highly active parent, he has never been away from his children longer than a day so I

know that will be a hard adjustment not only for him but especially for my niece and nephew, even my children. When we lived in Florida me and my children stayed with them and now that we are in Texas, I have gotten my own place but if too many days went by without them seeing my kids, he would tell my sister that they need to go get my boys or would have me bring them by. I see his best qualities daily in how he loves my sister and his children. Since all of this has taken place, they have come to live with me and my children and being that I'm a single parent, my boys get a firsthand glimpse of what it looks like for a man to love on a woman properly and care for his children, which is something I want them to be able to witness and apply once they come of age and start dating etc. Because of Charles, over the years myself and my children have had the opportunity to travel and meet people that we could only imagine meeting. Although it was not his responsibility, he always made sure to include my children and never showed difference between them and his children. My youngest son and their oldest daughter are 3 months apart and they are remarkably close not only in age but with each other, anything his children got, he made sure to give to my children. I do have a small village that helps me with my children, but aside from my mom's husband, Charles is the only male figure they have and not only is he an enormous chunk of my boy's village he is an important part of their lives. Things that my oldest who is 14, may not feel comfortable speaking to me about, he talks to Charles about those things, and I am incredibly grateful that he has maintained a good relationship with my son that he can go to him and talk to him about certain things. Every milestone in my boy's life, even when their own dads were not present, he was, when they were little and they had things such as dad's day at school, he was there to stand in for my children so they would not be alone. Every major accomplishment that I have had, he made sure that my sister was there, and they have always celebrated me in whatever I do. Anytime I have needed anything for myself or my boys, he has made sure we got what was needed with no questions asked. He is always willing to lend a helping hand to family and friends. Although I have told him before that he is too nice to people, he still does what he can for whomever. He always gives my boys sound advice. He is a mentor to my children, a great father to his children and husband to my sister. He is a Watch Dog at our kids' school where he goes and volunteers in the classrooms and around the campus, the staff and students love him.

Although he may have faced hardships before, since this all has happened, this is the first time I have witnessed any of them firsthand. From my knowledge, he has never been in any type of trouble and to be taken out of his home the way he was very scary for not only him but the entire family. After he was taken and my sister and niece were at their home, I received a startling text from my niece asking for

help. People that I have met over the years that he has introduced me to, always say nothing but good things about him and his work ethic. I know it took a lot for them to move in with me because he is so used to being the one to help others that when he needed help they knew no questions asked, I would help in any way that I could and opening my home to them when they needed it the most was a weight lifted off of him but at the same time, I know it was a hard adjustment for him. I can tell some days are harder than others for him, but I do not try to pry too deep into people's personal feelings and business. Seeing that we came from small towns, it was always his dream to provide a better life financially for not the family him and my sister created but also for his family back home to show other young males that even though you may come from a small town, that doesn't have to stop you from achieving any goals you set.

If he is sentenced and as a result taken away from his family, this will have a major impact on my sister and their children as well as my boys and other family members. Our kids are not sheltered, they have experienced more than many adults have but they have never known of anyone close to them going to jail. Honestly, the only time they have seen/heard anything about jail is from the tv or when I worked at the detention center. Although my oldest son's dad has been in and out of jail over the years, my son doesn't know that. He has never been an active parent in my son's life, so I have never told him that's where his dad is. Our kids are so close to Charles and even when he was gone for the day it was hard on everyone. When he had to travel to New York for court and be away from his 3-year-old, I babysat him that day and the entire day he called for his dad and kept going to the room looking for him. In all of his son's 3 years, I don't recall him ever being away from him. For my sister it would be hard as well as she is used to having him help daily with their kids, he does teeth brushing nightly and he and my sister both do bath time with him. He picks the kids up from school every day and is just a part of their day-to-day routine. In just what I see, the arrest did change him a bit because although he did not go many places before, he hardly goes anywhere now other than the kids' school, grocery stores. Other than that, he is home. I often ask them to just get out of the house for a few hours just to enjoy themselves, but they always decline and say he would rather just stay at home. This case has been difficult on his loved ones because 1, we don't like seeing him down, not able to do the work he loves to do or provide for his family how he normally would which I know can be stressful for anyone, and it's all scary having to

and we hope and pray that he does not have to go away, and they have to find out. Once this case is

complete, Charles and his family will continue to stay with me and my boys until they want to move out and get their own place, until then and even after, if necessary, I will support them however I can, whether it be financially or however. I will also do whatever I need to do to make sure that he is able to find work or whatever they may need to be able to live comfortably. I hope and pray not only for the sake of my sister and his children, but for my young boys that he is not taken away from them.

Thanks for your time,
Janeshia Jordan

# EXHIBIT D

Honorable Judge Vernon S. Broderick,
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Broderick,

I am writing this letter in full support of my husband, Charles Briscoe. My name is Laquisha Briscoe, and I am the owner of Next Level Consulting. Prior to starting this business, I was a stay-at-home mother. I have known Charles for over 23 years. Charles and I started dating in 2003 as juniors in high school. We were 16 year old kids who became inseparable. Upon graduating high school, we attended the same university, both receiving our bachelor's degree. Charles worked extremely hard and obtained his degree in 3 years and I obtained my degree in 4 years. Shortly after I graduated from college we got engaged. In 2011, at the age of 23, we got married.

In 2003, I loved Charles as a 16 year old girl, in 2011 my love for him had grown more, however, I can't describe how my love for him grew after we had children. In 2013 we welcomed our first child, our now 10 year old daughter. Upon finding out I was pregnant; Charles was extremely supportive and hands-on. He never missed a prenatal appointment and was very proud after she was born. He did everything for her and was determined to be the best dad ever. Once she entered pre-kindergarten he began volunteering at the school. They attended father-daughter dances, he took her to the movies almost weekly, took her to get her favorite doughnuts, shopping, dinners, and even stepped out of his comfort zone and started dressing up for Halloween in the costume of her choice. Now that she is older, he still volunteers at her school weekly; something that she absolutely loves because not only does she get to eat lunch with him but she feels a sense of security knowing that he's there, he takes her to the trampoline park, takes her to get her favorite cookies, and bible study. These are all things that he does weekly, and she looks forward to it. He also prays with her every night before bedtime. My heart melts just seeing their relationship because I didn't have that relationship with my father. My father wasn't in the household with me, we didn't attend father-daughter events, nor did we spend the quality time that Charles and our daughter spend. I was happy to see that my daughter wouldn't have to yearn for a father-daughter relationship because she's had the love and support of Charles since she was born. In

with the pandemic, not having a clue about what life would even like look for the U.S., and then finding out we were expecting during the peak of the pandemic was a bit scary but again we prayed to God and trusted that he would see us and everyone else through it. Unfortunately, due to the uncertainty of the pandemic, spouses weren't allowed to attend doctor's appointments, so Charles wasn't allowed to be at any prenatal visits. This was a bit difficult not only for me but for Charles as well. He didn't get to be at the appointment to hear the first heartbeat, he didn't get to see the first glimpse of the baby, he didn't get to experience the pregnancy in any of the ways that he did with our first child. Thankfully, I was able to record 15-30 seconds of each visit and he was able to somewhat experience the pregnancy. Since the birth of our son in December 2020, Charles has never missed a night of putting him to sleep for bedtime and I can count the number of nights that he has missed since our daughter's birth in June 2013.

Since he was younger, Charles only wanted to better himself, his family, friends, and community. He never wanted to become successful strictly for himself but for the betterment of others. Coming from a small town and being told over and over that it would be impossible to achieve certain goals, he made sure to work harder to make his dreams a reality and to be a positive example for others. Charles isn't perfect and he's made mistakes for which he is extremely sorry for. There isn't a day that goes by that Charles hasn't expressed remorse for his actions and disappointment in not only how it has impacted him but our children and me as well.

If Charles is sentenced to a term of imprisonment, it will destroy our children, myself, his parents, and our entire family. Since Charles' arrest his behavior has changed in a few ways. His faith is stronger than ever. He's intentional in his relationship with God. He does a daily devotional, weekly bible study with our children and nephews, and he and I have written a devotional book titled "Just A Moment: To Be Lost and Not Know That You Are Lost" which is a book to encourage others to develop and maintain a relationship with God. Charles is also a bit more mindful of everyone that he allows into his space and both the positive and negative impacts they can have on his life. His level of discernment has grown.



This case has been difficult for our family, especially our daughter and me since we were at home on the morning of his arrest. At 6:07am I always think of being awakened on that morning. Our daughter has awakened with tears in her eyes, recalling the police being in our home and her daddy being taken. Charles has been everything to me since the age of 16. With even the smallest things like taking the lid off a tightly sealed jar; Charles has always been there. Every time the lid releases, he always says, "I don't know what you would do without me" and my answer for over 20 years has always been the same "I pray that I never have to find out". That is still my prayer today. I pray that this isn't the day that I must find out what I would do without Charles. Charles is the best father that a child could have. I can only pray that when our daughter is older that her husband treats her with the love and respect that Charles treats me with. I also pray that our son treats his future wife with the respect and love that Charles gives me and that he is the hands-on, devoted father that Charles is to him.

Once this case is completed, Charles and I have plans to truly take the business to the Next Level. He will continue to spread the word on how good God is and mentor others. We plan to continue living in Texas. I will continue to support Charles emotionally; being that shoulder that he can lean on. I will continue to pray for him and with him because we know that God is in control and with him all things are possible. I can assure you that Charles will never be in a situation like this again. Thank you for taking the time to read my letter and my hope is that you will allow Charles to stay home and continue to be the father and husband that he is to my children and me.

Sincerely,

Laquisha Briscoe

# EXHIBIT E

Honorable Judge Vernon S. Broderick,
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Broderick,

I'm writing this letter to show support for my son-in-law, Charles Briscoe. First, allow me to tell you about myself. My name is Luther James Jackson, most that know me call me James. I am married to the mother of Charles' wife. I have been a Minister for over 20 years. I worked for FedEx for 30 plus years and I'm currently employed with Oakley. I have known Charles since 2012.

Ever since I met him, he has been nothing but a respectful, caring, and trustworthy individual. I tell him all the time that he is such a smart, businessman with a brilliant mind. Over the years I have witnessed him grow not only as a businessperson and family man but a man who loves God. He takes pride in being the head of the household, taking care of his wife, children, and those around him. Anyone can call on him and he will be willing to help because that's just the type of person he has always been. There have been times when I have gone to him for help with things that I may not have a had a clue about, but he made sure he explained everything in terms to where I could clearly understand. I have always admired the wisdom and expertise he has at such a young age but what I truly appreciate about him is the way that he loves and respects my stepdaughter (although I never call her my stepdaughter because to me, she is my daughter). A father always wants to make sure that their daughter is loved, respected, valued, and provided for; I can truly say that I couldn't have handpicked a better young man. When we go visit them or they come to visit our home, he is always helping his wife with their children. I love to see dads actively involved in their children's lives. He's always playing games with them, taking them on car rides, family walks, trips to the park, movie nights, or simply the day-to-day routines of cooking dinner and bathtime; he's involved. Charles calls me and we pray together; I give him advice not only by the bible but as if he was my child and is just calling to get fatherly advice. Charles has told me several times about how sorry he is for his actions. He also told me that he has asked forgiveness from God; I offered him words of encouragement and reminded him of the power of prayer. Years ago, I started sending Charles daily devotionals and he would always read them. The longest that he had completed was 30 days. Prior to Charles' arrest I began to see a change with his faith and his eagerness to learn. He began calling more often just to ask me questions about things that he had read in the bible and wanting me to explain things a bit more. Since Charles was arrested last March, he has been intentional and obedient with his morning and nightly devotionals; not skipping a single day. During this time, he has even taken the initiative to send devotionals. I remember when he first mentioned that he and my daughter were writing a devotional book to help others and how proud he was to send me a photo of the book cover. I know that he will do great things because I see so much in him and his ability to reach others.

If Charles is sentenced to a term of imprisonment, I know it will affect him, his wife, his kids, and family in a major way. His kids love their dad and look forward to seeing him daily. His son is his shadow that moves whenever Charles takes a step. His daughter loves being around him and him volunteering at her school. When I think of a unit, I picture them because he and his wife do everything as 1; when I look at them I see strength but I also see the stress and worry that they both carry. It has been difficult for me and my wife because I see the worry that my wife has; Charles has been in their lives since he was 16.

After this case is completed, I have no doubt that Charles will continue to be an asset to this world, and he will allow God to use him in ways that he may not have ever imagined. My wife and I are willing to do anything in our power to assist him and his family whether that's financially, spiritually, or emotionally. As I stated to Charles several times; when he repented and asked God for forgiveness, he was forgiven. My hope is that you will also extend grace to Charles during his sentencing. Thank you for taking the time to consider my letter.

Many Blessings,

Luther James Jackson

# EXHIBIT F

Honorable Judge Vernon S. Broderick,
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Dear Judge Broderick,

I am writing this letter in support of a very dear friend, Charles Briscoe. Before I speak on Charles, I
would like to introduce myself. My name is Latisha Boyd, and I currently work in retail management
where I oversee the daily operation and customer experience of a clothing store over the span of six
states. I have been with my company for the last thirteen years and have enjoyed making a career out of
what originally started as just a job out of college. I grew up as a military kid with my father serving in
the Air Force up to the Senior Master Seargent rank, and had the privilege to travel and live in Florida,
Japan, and Arkansas through his career. I graduated from Arkansas State University with my Bachelor's in
Chemistry, which is where I met Charles.

Charles' wife, Laquisha, is one of my best friends. I met her through my sorority in 2008, and we have
been inseparable since. She was dating Charles in college, as to how I met him. Ever since knowing
Charles, he was always interested in sports management and desired to become a sports agent someday.
I watched him put time and effort into achieving this goal, literally starting from nowhere at the very
bottom. Through the support of Laquisha, Charles was chasing his dream job while also trying to make
ends meet for him and his family. I was there when Laquisha and Charles married, and when they had
their first and second child. Charles has always been a homebody and a family man, so it came to no
surprise that he was an awesome husband and father. He has been at every doctor's appointment, every
dance recital, and every event in support of his kids.

Charles is a very genuine, caring person, and wants to positively impact everyone who is close to him in
life. He is the type of friend that you can call, and you know he will be there. It's been multiple occasions
when he has proved this to be true. He has been there for me on small occasions where I had a flat and
needed help, ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

Charles to this day has a great relationship with both of my sons who affectionately refer to him as
"Uncle Corey". Once again, he never misses a birthday or anything in support of my kids.

I have also witnessed Charles affectionately caring for others. One of Laquisha's other best friends,
Vanessa, was going through a difficult time with a divorce and dealing with a new diagnosis of dyslexia
with her son. As a single mom, she didn't have the funds to get him into the program to help get her son
the care he needed, and Charles stepped up to the plate and paid the bill, as this was someone who his
wife extremely cared for. It was about a $5,000 fee, and he did it with her knowing that she did not need
to pay it back. He also has helped his siter in law (Laquisha's sister), through her divorce in which he is
like a father figure to her two boys and provided basic needs for them as if they were his own kids. He
took them in and provided a roof over their head until she was able to get back on her feet as a single

mother of two. He also started a non-profit charity that gave back every holiday season. ███████████
█████████████████████████████████████████ Charles flew in some of her friends as a
surprise for her to help cheer her back up. He genuinely is a great person and sincerely cares for people.

You see Your Honor, Charles never wanted to earn money for personal pleasures alone, but more
importantly to help provide and give back to others. He never lived an overly lavish lifestyle, and never
was out and about spending money recklessly. He supported his family and friends and was a provider
for many years of others outside of his own household and did it willingly for others to not have to
struggle. I am unaware of all the details of his case, but since his arrest, Charles has felt great remorse
and disappointment in himself for his actions and individuals he became acquainted with. If he could go
back, he would have done things differently and now is trying to focus on what the future will hold. He is
working alongside his wife to build their Next Level Consulting business and getting things in order for his
family. His arrest would come as a hardship for his immediate family, as well as his friends and family. His
son and daughter need their father in their life as well as his nephews that look up to him as a father
figure. This would also add to the hardship of his wife having to raise the children on her own. He is their
emotional and physical support system as head of household and a strong pillar of the family. It would
also be detrimental to his health. Charles deals with severe stomach issues to which he is on a strict diet
to keep his episodes at bay. I watched him get hospitalized due to eating the wrong things and
experiencing severe pain. I ask that you give him leniency if you see fit as Charles has never been in any
type of trouble prior. He made some mistakes, but he is not a threat to society and has learned from his
mistakes. Thank you for your time and consideration of reading my letter.


Sincerely,

Latisha Boyd

# EXHIBIT G

# EXHIBIT H

# Faldyn Elementary



**25615 Clay Road, Katy, TX 77493**
**(281)-234-2900**
**https://www.katyisd.org/RCFE**

**To Whom It May Concern,**

I am writing to highly recommend Mr. Charles Briscoe, who has been an invaluable volunteer in the Watch DOGS program at Faldyn Elementary. Mr. Briscoe has consistently demonstrated exceptional dedication, positive attitude, and a genuine passion for making an impact on the school community.

His interactions with students are noteworthy, as he consistently engages with children from prekindergarten to fifth grade, creating a warm and inclusive atmosphere. His ability to connect with students on various age levels showcases his versatility and commitment to fostering a supportive learning environment.

One of Mr. Briscoe's standout qualities is his eagerness to help wherever he is needed. Whether assisting teachers in the classroom, supervising students during recess, or contributing to special events, he consistently goes above and beyond to support the school's mission and values. His versatility and willingness to take on diverse responsibilities make him an asset to any educational setting.

Mr. Briscoe's positive attitude is truly commendable. Regardless of the challenges or tasks at hand, he approaches every situation with enthusiasm and a smile. This positivity has not only made him a joy to work with but has also had a positive ripple effect on those around him, creating a more uplifting and encouraging atmosphere within our school.

Moreover, Mr. Briscoe's commitment to the Watch DOGS program is evident through his frequent volunteerism. He dedicates his time and effort multiple times a month, showcasing his reliability and sustained enthusiasm for contributing to the school community.

In addition to his regular contributions, Mr. Briscoe has gone the extra mile by providing the campus with incentives for a school-wide contest. This initiative not only added excitement to the school environment but also demonstrated his creativity and resourcefulness in supporting the school's initiatives.

In conclusion, I wholeheartedly recommend Mr. Charles Briscoe for any endeavor he pursues. His dedication, positive attitude, and genuine love for working with students make him an outstanding candidate. If you have any further questions or require additional information, please do not hesitate to contact me.


**Respectfully yours,**

**Rachel Weatherford**
**Library Media Specialist**

# EXHIBIT I

# United States Sentencing Commission



## *Statistical Information Packet*

### *Fiscal Year 2022*

### *Southern District of New York*

**Table 10**

**SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE**
**BY TYPE OF CRIME**
**Fiscal Year 2022**

**National**

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | DOWNWARD | | VARIANCE | |
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | | | | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total | 63,896 | 26,785 | 41.9 | 361 | 0.6 | 6,626 | 10.4 | 6,623 | 10.4 | 2,956 | 4.6 | 20,545 | 32.2 |
| Child Pornography | 1,435 | 489 | 34.1 | 10 | 0.7 | 28 | 2.0 | 3 | 0.2 | 68 | 4.7 | 837 | 58.3 |
| Drug Trafficking | 19,923 | 5,468 | 27.4 | 68 | 0.3 | 4,104 | 20.6 | 1,638 | 8.2 | 973 | 4.9 | 7,672 | 38.5 |
| Firearms | 9,310 | 4,753 | 51.1 | 73 | 0.8 | 482 | 5.2 | 9 | 0.1 | 350 | 3.8 | 3,643 | 39.1 |
| Fraud/Theft/Embezzlement | 5,488 | 2,303 | 42.0 | 63 | 1.1 | 714 | 13.0 | 9 | 0.2 | 179 | 3.3 | 2,220 | 40.5 |
| Immigration | 17,597 | 9,334 | 53.0 | 23 | 0.1 | 204 | 1.2 | 4,933 | 28.0 | 887 | 5.0 | 2,216 | 12.6 |
| Money Laundering | 1,191 | 310 | 26.0 | 12 | 1.0 | 315 | 26.4 | 11 | 0.9 | 58 | 4.9 | 485 | 40.7 |
| Robbery | 1,444 | 542 | 37.5 | 8 | 0.6 | 181 | 12.5 | 0 | 0.0 | 75 | 5.2 | 638 | 44.2 |
| Sex Abuse | 1,499 | 610 | 40.7 | 16 | 1.1 | 85 | 5.7 | 0 | 0.0 | 75 | 5.0 | 713 | 47.6 |
| Other Miscellaneous Offenses | 6,009 | 2,976 | 49.5 | 88 | 1.5 | 513 | 8.5 | 20 | 0.3 | 291 | 4.8 | 2,121 | 35.3 |

**Southern New York**

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | | | DOWNWARD | | VARIANCE | |
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | | | | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total | 1,297 | 248 | 19.1 | 1 | 0.1 | 115 | 8.9 | 0 | 0.0 | 28 | 2.2 | 905 | 69.8 |
| Child Pornography | 10 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 10 | 100.0 |
| Drug Trafficking | 464 | 47 | 10.1 | 1 | 0.2 | 45 | 9.7 | 0 | 0.0 | 9 | 1.9 | 362 | 78.0 |
| Firearms | 144 | 53 | 36.8 | 0 | 0.0 | 1 | 0.7 | 0 | 0.0 | 3 | 2.1 | 87 | 60.4 |
| Fraud/Theft/Embezzlement | 251 | 46 | 18.3 | 0 | 0.0 | 20 | 8.0 | 0 | 0.0 | 7 | 2.8 | 178 | 70.9 |
| Immigration | 34 | 16 | 47.1 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 2 | 5.9 | 16 | 47.1 |
| Money Laundering | 60 | 10 | 16.7 | 0 | 0.0 | 16 | 26.7 | 0 | 0.0 | 0 | 0.0 | 34 | 56.7 |
| Robbery | 89 | 13 | 14.6 | 0 | 0.0 | 9 | 10.1 | 0 | 0.0 | 1 | 1.1 | 66 | 74.2 |
| Sex Abuse | 25 | 5 | 20.0 | 0 | 0.0 | 1 | 4.0 | 0 | 0.0 | 0 | 0.0 | 19 | 76.0 |
| Other Miscellaneous Offenses | 220 | 58 | 26.4 | 0 | 0.0 | 23 | 10.5 | 0 | 0.0 | 6 | 2.7 | 133 | 60.5 |

Of the 64,142 National cases, 246 were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

Of the 1,297 cases from the Southern District of New York, no cases were excluded.

SOURCE:  U.S. Sentencing Commission, 2022 Datafile, USSCFY22.

16

# United States Sentencing Commission



## *Statistical Information Packet*

### *Fiscal Year 2021*

### *Southern District of New York*

**Table 10**

**SENTENCE IMPOSED RELATIVE TO THE GUIDELINE RANGE**
**BY TYPE OF CRIME**
**Fiscal Year 2021**

**National**

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | DOWNWARD | | VARIANCE | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
| Total | 57,041 | 24,434 | 42.8 | 296 | 0.5 | 5,493 | 9.6 | 6,387 | 11.2 | 2,762 | 4.8 | 17,669 | 31.0 |
| Child Pornography | 1,215 | 400 | 32.9 | 7 | 0.6 | 16 | 1.3 | 2 | 0.2 | 59 | 4.9 | 731 | 60.2 |
| Drug Trafficking | 17,595 | 4,994 | 28.4 | 56 | 0.3 | 3,487 | 19.8 | 1,741 | 9.9 | 838 | 4.8 | 6,479 | 36.8 |
| Firearms | 8,145 | 4,130 | 50.7 | 65 | 0.8 | 413 | 5.1 | 12 | 0.1 | 339 | 4.2 | 3,186 | 39.1 |
| Fraud/Theft/Embezzlement | 4,527 | 1,942 | 42.9 | 48 | 1.1 | 556 | 12.3 | 18 | 0.4 | 170 | 3.8 | 1,793 | 39.6 |
| Immigration | 16,906 | 9,000 | 53.2 | 34 | 0.2 | 148 | 0.9 | 4,594 | 27.2 | 907 | 5.4 | 2,223 | 13.1 |
| Money Laundering | 1,028 | 240 | 23.3 | 12 | 1.2 | 274 | 26.7 | 9 | 0.9 | 57 | 5.5 | 436 | 42.4 |
| Robbery | 1,300 | 503 | 38.7 | 10 | 0.8 | 157 | 12.1 | 1 | 0.1 | 62 | 4.8 | 567 | 43.6 |
| Sex Abuse | 1,061 | 419 | 39.5 | 11 | 1.0 | 63 | 5.9 | 1 | 0.1 | 56 | 5.3 | 511 | 48.2 |
| Other Miscellaneous Offenses | 5,264 | 2,806 | 53.3 | 53 | 1.0 | 379 | 7.2 | 9 | 0.2 | 274 | 5.2 | 1,743 | 33.1 |

**Southern New York**

| TYPE OF CRIME | TOTAL | WITHIN GUIDELINE RANGE | | DEPARTURE | | | | | | DOWNWARD | | VARIANCE | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | UPWARD | | §5K1.1 | | §5K3.1 | | | | | |
| | | N | % | N | % | N | % | N | % | N | % | N | % |
| Total | 943 | 187 | 19.8 | 1 | 0.1 | 114 | 12.1 | 3 | 0.3 | 10 | 1.1 | 628 | 66.6 |
| Child Pornography | 12 | 2 | 16.7 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 10 | 83.3 |
| Drug Trafficking | 344 | 44 | 12.8 | 0 | 0.0 | 39 | 11.3 | 0 | 0.0 | 4 | 1.2 | 257 | 74.7 |
| Firearms | 99 | 32 | 32.3 | 1 | 1.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 66 | 66.7 |
| Fraud/Theft/Embezzlement | 178 | 35 | 19.7 | 0 | 0.0 | 23 | 12.9 | 0 | 0.0 | 2 | 1.1 | 118 | 66.3 |
| Immigration | 29 | 14 | 48.3 | 0 | 0.0 | 0 | 0.0 | 3 | 10.3 | 0 | 0.0 | 12 | 41.4 |
| Money Laundering | 56 | 4 | 7.1 | 0 | 0.0 | 23 | 41.1 | 0 | 0.0 | 0 | 0.0 | 29 | 51.8 |
| Robbery | 63 | 9 | 14.3 | 0 | 0.0 | 3 | 4.8 | 0 | 0.0 | 0 | 0.0 | 51 | 81.0 |
| Sex Abuse | 16 | 3 | 18.8 | 0 | 0.0 | 3 | 18.8 | 0 | 0.0 | 0 | 0.0 | 10 | 62.5 |
| Other Miscellaneous Offenses | 146 | 44 | 30.1 | 0 | 0.0 | 23 | 15.8 | 0 | 0.0 | 4 | 2.7 | 75 | 51.4 |

Of the 57,287 National cases, 246 were excluded because information was missing from the submitted documents that prevented the comparison of the sentence and the guideline range.

Of the 943 cases from the Southern District of New York, no cases were excluded.

SOURCE: U.S. Sentencing Commission, 2021 Datafile, USSCFY21.